## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **JUDICIAL WATCH, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 12-cv-1350-BAH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF JUSTICE** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **UNITED STATES DEPARTMENT OF HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____ )

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

In this action, plaintiff Judicial Watch, Inc. challenges the processing of requests that it submitted to defendants the United States Department of Homeland Security (DHS) and the Office of Legal Counsel (OLC), a component of the United States Department of Justice (DOJ), for records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Plaintiff sought records from DHS and OLC regarding a decision announced by DHS on June 15, 2012, by which DHS will consider exercising prosecutorial discretion with respect to certain individuals who were brought to the United States as children, including the legal authority for DHS's decision.

After DHS and OLC acknowledged receipt of the FOIA requests, each agency conducted a reasonable and adequate search for responsive records, directed to those systems in which responsive records were likely to be located, processed potentially responsive records, withholding records or information subject to FOIA Exemptions, and released all non-exempt information to plaintiff.  DHS and OLC properly withheld exempt information.  Each agency relied upon the deliberative process privilege and the attorney-client privilege to withhold information under Exemption 5, and DHS also relied upon Exemptions 6 and 7(E).

### **Standard of Review**

The FOIA mandates the disclosure of government records unless the requested information falls within one of the nine statutory exemptions.  5 U.S.C. § 552(b).  A district court's subject-matter jurisdiction under the FOIA is dependent upon a showing that a federal agency has improperly withheld agency records.  5 U.S.C.§ 552(a)(4)(B) (providing jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld"); see also Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980); McGehee v. CIA, 697 F.2d 1095, 1105 (D.C. Cir. 1983).

Under the FOIA, if the plaintiff challenges the adequacy of the defendant agency's search for responsive records, the district court determines whether the agency has made "reasonable efforts to search for the records" requested by the plaintiff.  See 5 U.S.C. § 552(a)(3)(C).  If an agency's search locates records responsive to a request, and the agency withholds or redacts records under any of the statutory exemptions, the court conducts a de novo review to determine whether such information properly falls under any such exemptions.  Id. § 552(a)(4)(B).

2

Most FOIA cases are resolved through motions for summary judgment.  See <u>DeMartino v. FBI</u>, 511 F. Supp. 2d 146, 150 (D.D.C. 2007).  An agency may satisfy its burden by submitting a declaration that adequately describes the search for potentially responsive records, identifies any material that is being withheld, and provides the grounds for non-disclosure.  See <u>DOJ v. Reporters Comm. for Freedom of the Press</u>, 489 U.S. 749, 753 (1989); <u>Summers v. DOJ</u>, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  In general, a court's decision on a summary judgment motion in FOIA cases "does not hinge on the existence of a genuine issue of material fact," and is instead based on the sufficiency of the agency affidavit.  See <u>Hemenway v. Hughes</u>, 601 F. Supp. 1002, 1004 (D.D.C. 1985).  Absent countervailing evidence, summary judgment should be granted if the agency declarations are clear, specific, and reasonably detailed, and if they describe the withheld information in a factual and nonconclusory manner.  <u>Miller v. Casey</u>, 730 F.2d 773, 776 (D.C. Cir. 1984).

## ARGUMENT

**I.**     **THE AGENCIES CONDUCTED REASONABLE AND ADEQUATE SEARCHES FOR RESPONSIVE DOCUMENTS.**

### A.     <u>The Standards for a Reasonable and Adequate Search</u>

The adequacy of an agency's search for responsive records is judged by a standard of reasonableness, and whether a search is adequate is determined by methods, not results.  See <u>Nance v. FBI</u>, 845 F. Supp. 2d 197, 201 (D.D.C. 2012).  In order for an agency to show that it has discharged its obligations under the FOIA and that it is entitled to summary judgment, the agency must demonstrate that it has conducted a search "reasonably calculated to uncover all relevant documents."  <u>See</u> <u>Students Against Genocide v. Dep't of State</u>, 257 F.3d 828, 838 (D.C. Cir. 2001); <u>Weisberg v. DOJ</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The agency is not required

to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  See Western Ctr. for Journalism v. IRS, 116 F.Supp. 2d 1, 9 (D.D.C. 2000), aff'd, 2001 WL 1699416 (D.C. Cir. Dec. 18, 2001) (per curiam) (unpublished decision).  The issue is whether the search conducted by the agency was "reasonably calculated to generate responsive documents."  See Baker & Hostetler v. DOC, 473 F.3d 312, 318 (D.C. Cir. 2006).

An agency may establish the adequacy of its search by submitting an agency declaration. Id., 473 F.3d at 318.  Although the declaration should be "sufficiently detailed," the standard "is not 'meticulous documentation [of] the details of an epic search.'"  Texas Indep. Producers Legal Action Ass'n v. IRS, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).  The agency "need only provide affidavits explaining in 'reasonable detail' the scope and method of the search, in absence of countervailing evidence."  Texas Indep. Producers, 605 F. Supp. at 547 (quoting Perry).  Agency affidavits "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence of other documents." Grounds Saucer Watch v. CIA, 692 F. 2d 770, 771 (D.C. Cir. 1981).  Accordingly, affidavits describing the agency search procedures are sufficient for purposes of summary judgment if they are "relatively detailed in their description of the files searched and the search procedures, and if they are nonconclusory and not impugned by evidence of bad faith." Citizens Comm'n on Human Rights v. FDA, 45 F.3d 1325, 1328 (9th Cir. 1995).

###### B.   DHS Conducted a Reasonable Search in Response to Plaintiff's Request.

On June 15, 2012, DHS announced its decision ("Deferred Action for Childhood Arrivals" (DACA)), by which DHS will consider exercising prosecutorial discretion with respect to certain individuals who were brought to the United States as children, and these individuals

will be eligible for employment authorization during the period their removal action is deferred. See Declaration of James Holzer (Holzer Decl.) ¶ 23 & Exh. E.

By letter dated June 22, 2012, plaintiff sought from DHS "[a]ll records concerning, regarding, or relating to" the DHS decision to exercise prosecutorial discretion with respect to individuals who came to the United States as children as outlined in a June 15, 2012 Memorandum by Secretary Napolitano, including, but not limited to, "communications, meeting notes and agenda, briefing materials, and policy memoranda"; and "the legal authority for the DHS decision. . . ."  Holzer Decl. ¶ 8 & Exh. A.

DHS initially determined that any potentially responsive records to the request would be located in the Office of the Executive Secretariat (ESEC), which provides direct support to the Secretary and the Deputy Secretary of DHS, as well as support to leadership across the Department.  Holzer Decl. ¶ 10.  This support takes many forms including the accurate and timely dissemination of information and written communications. Id.

By letter dated July 5, 2012, DHS's Privacy Office acknowledged receipt of plaintiff's FOIA request.[1]  Holzer Decl. ¶ 11 & Exh. B.  The letter informed the requester that, because the request sought numerous documents and would necessitate a thorough and wide-ranging search, DHS invoked the 10-day extension as allowed under 5 U.S.C. § 552(a)(6)(B); directed the requester to contact DHS's Privacy Office if the requester sought to narrow the scope of the request; stated that DHS queried ESEC for responsive records; and, if the requester believed that

---

[1] The DHS Privacy Office centralizes DHS's FOIA and Privacy Act operations to provide policy and programmatic oversight, and support implementation across the Department.

another DHS component possessed responsive records, directed the requester to submit another

FOIA request to DHS's Privacy Office, identifying the specific component and the records.  Id.

On July 5, 2012, the DHS Privacy Office directed ESEC to search for responsive records.

Holzer Decl. ¶ 12.  ESEC searched for records in paper and electronic form, using the following

search terms: "prosecutorial discretion," "PD," "deferred action for childhood arrivals,"

"DACA," "deferred action," and "June 15."  Id.  As a result of the search, potentially responsive

records were located and were forwarded to DHS Privacy for review.  Before DHS was able to

complete its review of those records, the requester commenced litigation.  Id.

On January 30, 2013, the DHS Privacy Office determined that the following DHS

components may have additional responsive records, and directed these components to conduct a

search for responsive records, and to forward any such records to DHS Privacy for processing

and release: United States Customs and Border Protection (CBP), and United States Citizenship

and Immigration Services (USCIS).  Holzer Decl. ¶ 13.

By letter dated February 23, 2013, DHS provided its first interim response to plaintiff.

Holzer Decl.  ¶ 14 & Exh. C.  The letter stated that DHS located 175 pages of responsive records

responsive to the FOIA request; and that DHS determined that five pages were releasable in their

entirety, that 75 pages were partially releasable, and that 95 pages were being withheld in their

entirety, pursuant to FOIA Exemptions 5 and 6, 5 U.S.C. § 552 (b)(5) and (b)(6); and the letter

included each record that was releasable in its entirety or partially.  Id.

CBP has a priority mission of keeping terrorists and their weapons out of the U.S.  It also

has a responsibility for securing and facilitating trade and travel while enforcing hundreds of

U.S. regulations, including immigration and drug laws.  Holzer Decl. ¶ 15.  The CBP FOIA

Office determined that the CBP program offices most likely to maintain records responsive to

plaintiff's FOIA request were Office of Border Patrol, Office of Field Operations, and Office of Air and Marine.  Id. ¶ 16.  After these CBP components searched for and located responsive records, these records were forwarded to the DHS Privacy Office for processing and release.  Id.

USCIS is the arm of DHS that oversees lawful immigration to the United States.  Holzer Decl. ¶ 17.  USCIS provides accurate and useful information to customers, granting immigration and citizenship benefits, promoting an awareness and understanding of citizenship, and ensuring the integrity of the immigration system.  Id.  After DHS Privacy directed the USCIS FOIA Office to conduct a search for responsive records, the USCIS FOIA Office determined that the USCIS program offices most likely to maintain records responsive to plaintiff's FOIA request were Service Center Operations; Field Operations Directorate, Fraud Detection and National Security, Enterprise Solutions Office, and Office of Chief Counsel.  Id. ¶ 18.  After these USCIS components searched for and located responsive records, these records were forwarded to DHS Privacy for processing and release.  Id. ¶ 19.

By letter dated March 1, 2013, DHS provided its second interim response to Plaintiff.  Holzer Decl. ¶ 20 & Exh. D.  The letter stated that DHS located an additional 235 pages of responsive records as a result of the search; and that DHS determined that 33 pages were releasable in their entirety, that 162 pages were partially releasable, and that 56 pages were being withheld in their entirety, pursuant to FOIA Exemptions 5, 6, and 7(E), 5 U.S.C. § 552 (b)(5), (b)(6), and (b)(7)(E); and the letter included each record that was releasable in its entirety or partially.  Id.

By letter dated March 4, 2013, DHS provided its third and final response to plaintiff.  Holzer Decl. ¶ 21 & Exh. E.  The letter stated that DHS located an additional 1,629 pages of records responsive to the FOIA request; and that DHS determined that 366 pages were releasable

in their entirety, that 84 pages were partially releasable, and that 1,179 pages were withheld in their entirety, pursuant to Title 5 U.S.C. § 552 (b)(5), (b)(6), and (b)(7)(E) FOIA Exemption 5, 6, and 7E; and the letter included each record that was releasable in its entirety or partially.  Id.

The searches conducted by OLC were thus "reasonably calculated to generate responsive documents." See Baker & Hostetler v. DOC, 473 F.3d at 318.

in this case thus meet the standards of adequacy and reasonableness.

### C.     OLC Conducted a Reasonable Search in Response to Plaintiff's Request.

By letter dated June 22, 2012, plaintiff sought from OLC "[a]ll records concerning, regarding, or relating to [DHS's] decision to exercise prosecutorial discretion with respect to individuals who came to the United States as children as outlined in a June 15, 2012 Memorandum" by the Secretary of Homeland Security, including "opinions, memoranda, or legal advice rendered" by OLC.  See Colborn Decl. ¶ 7 & Exh. 1.

After receiving the FOIA request, OLC identified the OLC attorneys who were involved in providing advice to Executive Branch clients concerning the subject of the FOIA request. Colborn Decl. ¶ 14.  OLC then conducted a search of their paper and electronic files for potentially responsive records, and an OLC attorney reviewed all of the documents that were collected.  Id. ¶¶ 14, 15.  As a result of the search, OLC identified 80 documents as potentially responsive.  Id. ¶ 15.  OLC released six of these documents to plaintiff, subsequently determined that nine of the remaining 73 documents were not responsive to the FOIA request, and withheld the remaining 64 documents under FOIA Exemption 5, as listed on the accompanying Vaughn index.  Id. ¶¶ 15, 16.  OLC also referred one document to the Department of Justice's Office of Immigration Policy (OIP), which subsequently released that document to plaintiff.  Id. ¶ 15, 16.

The search conducted by OLC was thus "reasonably calculated to generate responsive documents." See Baker & Hostetler v. DOC, 473 F.3d at 318.

## II.    THE AGENCIES PROPERLY WITHHELD EXEMPT INFORMATION.

### A.    The Standard for Applying Exemptions

An agency may satisfy its burden to sustain the application of a FOIA exemption by submitting an agency declaration that describes the withheld material with reasonable specificity as well as the reasons for non-disclosure.  See Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009); Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973).  A court shall accord "substantial weight" to an agency declaration regarding the agency's determination as to exempted material.  See Kishore v. DOJ, 575 F. Supp. 2d 243, 252 (D.D.C. 2008), citing 5 U.S.C. § 552(a)(4)(B).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  Larson, 565 F.3d at 862, quoting Wolf v. CIA, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

### B.    EXEMPTION 5

FOIA Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5); Dep't of the Interior & BIA v. Klamath Water Users Protective Assoc., 532 U.S. 1, 8 (2001).  Exemption 5 applies to "those documents, and only those documents that are normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).  Exemption 5 thus includes documents that are protected by the attorney-client privilege, the work-product doctrine, and the deliberative process privilege. United States v. Weber Aircraft Corp., 465 U.S. 792, 800 (1984); see also NLRB v. Sears, 421 U.S. at 149, 154; Judicial Watch, Inc. v. FDA,  449 F.3d 141, 151 (D.C. Cir. 2006).

1.      <u>**The Deliberative Process Privilege**</u>

Under Exemption 5, the deliberative process privilege extends to those agency documents

that are both "predecisional" and "deliberative."  <u>See</u> <u>Coastal States Gas Corp. v. U.S. Dep't of</u>

<u>Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980); <u>Cleary, Gottlieb v. HHS</u>, 844 F. Supp. 770, 780

(D.D.C. 1983).  A document is "predecisional" if it was "generated before the adoption of an

agency policy."  <u>See</u> <u>Coastal States Gas Corp.</u>, 617 F.2d at 866; <u>see</u> <u>also</u> <u>Renegotiation Bd. v.</u>

<u>Grumman Aircraft Eng'g Corp.</u>, 421 U.S. 168, 184 (1975) (a pre-decisional document is one

prepared in order to assist an agency decisionmaker in arriving at his decision); <u>North Dartmouth</u>

<u>Prop., Inc. v. HUD</u>, 984 F. Supp. 65, 69 (D. Mass. 1997) (emphasizing the importance of

protecting the "ingredients" of the agency's decisionmaking process).  A document is

"deliberative" if it is "a direct part of the deliberative process" in that it "makes

recommendations or expresses opinions on legal or policy matters."  <u>Vaughn v. Rosen</u>, 523 F.2d

1136, 1143-44 (D.C. Cir. 1975).

The general purpose of the deliberative process privilege is to "prevent injury to the

quality of agency decisions."  <u>NLRB v. Sears</u>, 421 U.S. at 151.  Courts have recognized that this

privilege is an "ancient [one] . . . predicated on the recognition that the quality of administrative

decision-making would be seriously undermined if agencies were forced to operate in a

fishbowl."  <u>Dow Jones & Co. v. DOJ</u>, 917 F.2d 571, 573 (D.C. Cir. 1990) (internal quotations

marks and citation omitted).  The deliberative process privilege "rests on the obvious realization

that officials will not communicate candidly among themselves if each remark is a potential item

of discovery and front page news," and the privilege serves to enhance the quality of agency

decisions "by protecting open and frank discussion among those who make them within the

Government."  <u>Dep't of the Interior v. Klamath Assoc.</u>, 532 U.S. at 8 (internal quotation marks

10

and citations omitted).  Thus, Government agencies may rely on the privilege to encourage open,

frank discussions on matters of policy between subordinates and superiors; to protect against

premature disclosure of proposed policies before they are finally adopted; and to protect against

public confusion that might result from disclosure of reasons and rationales that were not in fact

ultimately the grounds for an agency's action.  See NLRB v. Sears, 421 U.S. at 150-54; Russell

v. Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

Documents covered by the deliberative process privilege under Exemption 5 include

those "reflecting advisory opinions, recommendations and deliberations comprising part of a

process by which government decisions and policies are formulated."  NLRB v. Sears, 421 U.S.

at 150; see also Techserve Alliance v. Napolitano, 803 F. Supp. 2d 16, 26 (D.D.C. 2011) (listing

categories of records subject to the deliberative process privilege).  In enacting Exemption Five,

Congress determined that the disclosure of material that is predecisional and deliberative harms

an agency's decisionmaking process.  See McKinley v. Board of Governors of Fed. Reserve,

647 F.3d 331, 339 (D.C. Cir. 2011).  In a FOIA case, the  court's role "is not to second-guess

that Congressional judgment on a case-by-case basis."  Id.  Otherwise, agencies "'would have to

pass on requests wholly impressionistically, subject to the impressionistic second-guessing of the

courts.  This is hardly a satisfactory or efficient way of implementing FOIA.'"  Id. at 340

(quoting Wolfe v. HHS, 839 F.2d 768, 775 (D.D.C. 1988) (en banc)).  "There should be

considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency

give-and-take – of the deliberative process – by which the decision itself is made.'"  Chemical

Mfrs. Ass'n v. CPSC, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting Vaughn v. Rosen, 523 F.2d

at 1144).  The agency is best situated "to know what confidentiality is needed 'to prevent injury

to the quality of agency decisions . . . .'" <u>Chem. Mfrs. Ass'n</u>, 600 F. Supp. at 118 (quoting

<u>NLRB v. Sears</u>, 421 U.S. at 151).

DHS properly withheld records or information under Exemption 5 based on the

deliberative process privilege.  The records withheld in whole or in part by DHS under the

deliberative process privilege include: discussion and analysis of procedural and substantive

issues regarding DHS's decision, Deferred Action for Childhood Arrivals (DACA), and of

relevant federal laws and regulations; proposed details of operational implementation plans;

discussions of appropriations options; and draft justifications for emergency review of possible

form amendments.  <u>See</u> Holzer Decl. ¶ 24.  For each document withheld or redacted by DHS

under Exemption 5 based on the deliberative process privilege, the information is protected

because it is confidential (having not been released to the public), pre-decisional, and

deliberative.  <u>Id</u>. ¶ 25.  The release of such internal information would discourage the expression

of candid opinions and inhibit the free and frank exchange of information among agency

personnel.  <u>Id</u>.

The willingness of Government officials and employees to provide honest and open

assessments and advice depends on the ability of federal agencies to protect those opinions from

routine public oversight.  Some of the documents at issue are "draft materials," and, as such, are

protected by the deliberative process privilege because they inherently concern pre-decisional

and deliberative information.  <u>See</u> <u>Dudman Commc'ns Corp. v. Air Force</u>, 815 F.2d 1565, 1568-

69 (D.C. Cir. 1987).  Where, as here, the documents were "prepared in order to assist an agency

decision maker in arriving at his decision," <u>see</u> <u>Renegotiation Bd. v. GrummanCorp.</u>, 421 U.S.

at 184, and include "recommendations, draft documents, proposals, suggestions, and other

subjective documents which reflect the personal opinions of the writer rather than the policy of

the agency," Coastal States, 617 F.2d at 866, the agency may protect them under Exemption 5.

Disclosure of the personal views of individual participants, which do not necessarily reflect those

of their agency, could lead to misinterpretation of agency positions and public confusion

regarding reasons and rationales that were not ultimately adopted.  See, e.g., Judicial Watch, Inc.

v. Clinton, 880 F. Supp. 1, 13  (D.D.C. 1995), aff'd, 76 F.3d 1232 (D.C. Cir. 1996).

Documents withheld by DHS implicate "deliberations comprising part of a process by

which governmental decisions and policies are formulated."  See NLRB v. Sears, 421 U.S. at

150 (citation omitted).  The Holzer Declaration details the harms that would result if these kinds

of communication were disclosed, including inhibition of the frank and candid expression of

views by the agency that is essential to carry out its responsibilities, and damage to the agency's

decision-making process.

The documents withheld by OLC under Exemption 5 are protected by the deliberative

process privilege.  Plaintiff's FOIA request to OLC sought records regarding DHS's decision to

adopt DACA, including "opinions, memoranda, or legal advice rendered" by OLC.  Colborn

Decl. ¶ 1 & Exh. 1 at 1.

The principal function of OLC is to assist the Attorney General in his role as legal adviser

to the President of the United States and to departments and agencies of the Executive Branch.

See Colborn Decl. ¶ 2.  OLC provides advice and prepares opinions addressing a wide range of

legal questions involving the operations of the Executive Branch.  Id.  "The D.C. Circuit has long

recognized that legal advice is an integral part of the decision-making process and is protected by

the deliberative process privilege."  EPIC v. DOJ, 584 F. Supp. 2d 65, 75 (D.D.C. 2008), citing

Brinton v. Dep't of State, 636 F. 2d 600, 604 (D.C. Cir. 1980); and Coastal States, 617 F. 2d 854,

868 (D.C. Cir. 1980).  "If OLC provides legal advice as part of a decision-making process, this legal advice is protected under the deliberative process privilege."  EPIC, 584 F. Supp. 2d at 75.

    The documents withheld by OLC under Exemption 5 based on the deliberative process privilege include: handwritten notes made by OLC attorneys on drafts of guidance, memoranda, and other documents that were prepared by DHS concerning DACA and that were collected by OLC attorneys in order to furnish legal advice on that subject to Executive Branch clients, and on background materials such as law review articles (Documents 1-19); internal emails among OLC attorneys, or from an OLC attorney to an attorney in another DOJ component concerning the preparation of legal advice, in some cases with attachments (Documents 20-33); drafts of legal advice prepared by OLC attorneys for the White House Counsel's Office concerning DACA, and internal emails among OLC attorneys concerning the deliberative process of preparing these drafts (Documents 34-42); and emails between OLC attorneys and the White House Legal Counsel's Office providing legal advice concerning DACA**,** or internal emails among OLC attorneys discussing the provision of such legal advice (Documents 43-64).  See Colborn Decl. ¶¶ 20-24.

    Each of these documents withheld by OLC under Exemption 5 is protected by the deliberative process privilege because it is confidential, pre-decisional, and deliberative.  See Colborn Decl. ¶¶ 20-24.  For example, the handwritten notes made by OLC attorneys are pre-decisional and deliberative, as part of the research and exchange of ideas and suggestions that accompanies careful Executive Branch decision-making.  Colborn Decl. ¶ 20.  The emails between OLC attorneys, or from an OLC attorney to an attorney in another component of DOJ, reflect internal deliberations made in the course of preparing legal advice to be provided to Executive Branch clients.  Id. ¶ 21.  The drafts of legal advice prepared by OLC attorneys for

Executive Branch clients are part of the deliberative process, by which OLC attorneys articulate and refine their legal advice and analysis, often seeking out comments and adjusting their analysis in response to input from their colleagues.  Id. ¶ 22.  The emails between OLC attorneys and the White House Counsel's Office, or between OLC attorneys, were prepared in advance of Executive Branch decisions relating to DACA, and these emails reflect legal advice, the preparation of advice, or other deliberations.  Id. ¶ 24.

Compelled disclosure of such documents would seriously inhibit the candor and effectiveness of the OLC attorneys engaged in the highly deliberative process of providing legal advice to Executive Branch clients, and the quality and integrity of the final result would inevitably suffer.  See Colborn Decl. ¶¶ 20-24.

As the Holzer and Colborn Declarations and the agencies' Vaughn indexes reflect, internal agency documents subject to the deliberative process privilege are protected from disclosure by Exemption 5, because the disclosure of such pre-decisional and deliberative documents would harm the agency's decision-making processes.

## 2.    The Attorney-Client Privilege

Exemption 5 also applies to agency records protected under the attorney-client privilege. See Coastal States, 617 F.2d at 862; NLRB v. Sears, 421 U.S. at 154.  The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  See In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  A government agency "needs the . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors."  Coastal States, 617 F.2d at 863.

The documents withheld by OLC under the attorney-client privilege include: confidential communications between OLC attorneys and the White House Counsel's Office made for the purpose of providing legal advice regarding DACA, internal OLC documents recording such communications, and draft documents that reflect such legal advice (Documents 34-64). See Colborn Decl. ¶¶ 23, 25.

Disclosing these confidential documents would seriously inhibit the free and candid flow of information between agency decision-makers and their outside legal advisers, and would chill the sort of full and frank communication between attorneys and their clients that in turn promotes broader public interests in the observance of law and the administration of justice. Colborn Decl. ¶¶ 23, 25. If the confidentiality of OLC's advice and related communications with clients is readily breached, Executive Branch officials will be reluctant to continue to request and rely on legal advice from OLC on sensitive matters – a result that would undermine the public interest in an Executive Branch that strives to abide by the rule of law. Id.

The records withheld in whole or in part by DHS under Exemption 5 based on the attorney-client privilege include: discussion and analysis of procedural and substantive issues regarding DACA, and of relevant laws and regulations; draft justifications for emergency review of possible form amendments; and discussions of appropriations options. Holzer Decl. ¶ 27. Such information involves confidential communications between DHS and outside legal advisers made for the purpose of obtaining legal advice, internal DHS documents recording such communications, and draft documents that reflect legal advice provided to DHS. Disclosing these confidential documents would impede the free and candid flow of information between DHS and its outside legal advisers. Id. ¶ 28.

C.      **EXEMPTION 6**

Exemption 6 applies to matters that are located in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Whether the disclosure of such matters "would constitute a clearly unwarranted invasion of personal privacy" requires a balancing of the public's right to disclosure against the individual's right to privacy.  Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976).  If a protectible privacy interests exists that would be threatened by disclosure, the determination of the public's right to disclosure turns on "the nature of the requested document and its relationship to" the public interest generally.  Reporters Committee, 489 U.S. at 772.  Courts weigh the public's interest in the revelation of information protected by these redactions versus the privacy interests at issue.  See National Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004).  The Supreme Court has construed Exemption 6 "broadly."  See Judicial Watch, Inc. v. FDA, 449 F.3d 141, 152 (D.C. Cir. 2006).

DHS properly withheld information under Exemption 6.  After a careful review of the responsive documents, DHS determined that portions of the responsive documents qualify for protection under the Exemption 6.  Such information includes names and addresses of DHS employees contained in emails.  Holzer Decl. ¶ 30.  DHS determined that the privacy interests of the individuals in the records requested by plaintiff outweigh any minimal public interest in disclosure of the information. Id. ¶ 31.

D.      **EXEMPTION 7(E)**

Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the six harms enumerated in the sub-parts of the exemption.  See

17

5 U.S.C. § 552(b)(7).  Before an agency can invoke any of the six harms enumerated in

Exemption 7, it must demonstrate that the records or information at issue were compiled for law

enforcement purposes.  The focus is on how and under what circumstances the requested records

were compiled, and whether the files relate to anything that can be characterized as an

enforcement proceeding. See Jefferson v. DOJ, 284 F.3d 172, 176-77 (D.C. Cir. 2002).  To show

that the documents were "compiled for law enforcement purposes," the agency need only

establish a "rational nexus" to one of the agency's law enforcement duties. See Blackwell v. FBI,

646 F.3d 37, 40 (D.C. Cir. 2011).

DHS and its component agencies are responsible for enforcing many United States laws

and regulations.  See Holzer Decl.  ¶¶ 5, 15, 17, 32.  The records at issue are related to the

enforcement of federal laws regarding immigration, and the investigation and enforcement

activities are within the duties of DHS and its component agencies. Id. ¶ 33.

Exemption 7(E) protects records compiled for law enforcement purposes, the release of

which would disclose techniques and or procedures for law enforcement investigations or

prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

such disclosure could reasonably be expected to risk circumvention of the law.  5 U.S.C.

§ 552(b)(7)(E).  Exemption 7(E) "looks not just for circumvention of the law, but for a risk of

circumvention," in other words, "the chance of a reasonably expected risk."  Blackwell v. FBI,

646 F.3d at 42, quoting Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009).  The

D.C. Circuit stated: "Under our precedents, Exemption 7(E) sets a relatively low bar for the

agency to justify withholding."  Blackwell, 646 F. 3d at 42.

After a careful review of the responsive documents, DHS determined that portions of the responsive documents qualify for protection under Exemption 7(E).  See Holzer Decl. ¶ 34.  For such records, DHS determined that disclosing any of the information being withheld under Exemption 7(E) would reveal investigatory of procedural techniques that DHS and other agencies use in investigations or prosecutions of immigration fraud or other violations, would potentially enable the circumvention of law, and could create national security and homeland security concerns.  Id. ¶ 35.

Such information is properly subject to protection under Exemption 7(E).  See Morley v. CIA, 508 F.3d 1108, 1129 (D.C. Cir. 2007) (finding that withholding of documents that would release insight into agencies' investigatory or procedural techniques is proper), cited in Miller v. DOJ, 872 F. Supp. 2d 12, 28 (D.D.C. 2012); Techserve Alliance v. Napolitano, 803 F. Supp. 2d. at 29 (affirming that DHS properly withheld documents under exemption 7(E), where disclosure would reveal the selection criteria, fraud indicators, and investigative process used in fraud investigations during the H-1B visa process).

### E.  REASONABLY SEGREGABLE INFORMATION

An agency may properly withhold entire records when the exempt and nonexempt information are "inextricably intertwined," such that the redaction of exempt information would "produce an edited document with little informational value."  See Mingo v. DOJ, 793 F. Supp. 2d 447, 453 (D.D.C. 2011), quoting Mays v. DEA, 234 F.3d 1324, 1327 (D.C. Cir. 2000).  Absent contrary evidence, agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material.  See Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

19

DHS conducted a document-by-document review, inspecting each document for any non-exempt "reasonably segregable" information pursuant to 5 U.S.C. § 552(b).  Holzer Decl. ¶ 36.  DHS released any such reasonable segregable information.  Id.  In some cases, DHS determined that any factual information contained in those records was not reasonably segregable because the selection of the facts was an integral part of the legal advice and analysis, or that separation of any non-exempt content from the exempt material would produce only sentences or fragments that have negligible or no substantive value.  Id.

OLC withheld certain records in their entirety, because no reasonably segregable portion could be released without harming the deliberative process of the Government.  In conducting its document-by-document review, OLC inspected each of these documents for any non-exempt "reasonably segregable" information pursuant to 5 U.S.C. § 552(b).  Colborn Decl. ¶ 27.  OLC located no reasonably segregable non-exempt material in any of the documents.  OLC found that any factual information contained in those records was not reasonably segregable because the selection of the facts was an integral part of the legal advice and analysis, and that separation of any other non-exempt content from the exempt material would produce only sentences or fragments that have negligible or no substantive value.  Id.

## CONCLUSION

For the forgoing reasons, defendants DHS and DOJ request that the Court enter summary judgment for them on all claims.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director


*/s/ Peter T. Wechsler*
PETER T. WECHSLER (MA 550339)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Tel.: (202) 514-2705
Fax: (202) 616-8470
Email: peter.wechsler@usdoj.gov
*Attorneys for Defendants*

Dated: March 4, 2013